UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MIGUEL ANGEL SUAREZ, MIGUEL CIELO RAMOS, GERARDO IXEHUATL HERNANDEZ, GUSTAVO JACOBO PERALTA, JUAN MANUEL CUERVO REYES, CARLOS RANGEL CAMACHO, MARCELINO BARRALES RAMOS, NESTOR HERNANDEZ SANCHEZ, LEO DAN ANDRADE HUERTA, JOSE GAGUANCELA AUCACAMA, FIDENCIO JUAREZ TECUAPACHO, and EFREN ROMERO, *on behalf of themselves*, *and others similarly situated*, | Case No.: 19 Civ. 7210 (RWL) |
| Plaintiffs, | |
| -against- | |
| BRASSERIE FELIX INC., *dba* RESTAURANT FELIX, and ALEXANDRE CATTEAU, and ALAIN DENNEULIN, *individually*, | |
| Defendants. | |

**JOINT MOTION FOR APPROVAL OF FLSA SETTLEMENT AND DISMISSAL**

The plaintiffs are former employees of Brasserie Felix Inc. and its owners ("Defendants"), a French restaurant in New York City.[1] Plaintiffs and Defendants, collectively referred to as the "Parties" herein, respectfully make this request that the Court approve their settlement of the above-captioned matter. As the Plaintiffs' action and claims arise under the Fair Labor Standards Act, 29 USC § 216(b) ("FLSA"), the Parties' settlement must be approved by this Court.

> The Fair Labor Standards Act expressly prohibits settlement of any right to unpaid minimum wages or unpaid overtime claims by employees, made pursuant

---

[1] The claim is brought by twelve (12) individuals who are are, collectively, "plaintiffs" herein. This action is not a class action, so there are no unrepresented/putative plaintiffs. Defendants are Brasserie Felix Inc., dba Restaurant Felix, and its principals, Alexandre Catteau, and Alain Denneulin, collectively referred to as "Defendants".

> to 29 USC §§ 206-07, without the supervision of the Secretary of Labor. 29 USC §216(c) (noting that a supervised settlement agreement "shall constitute a waiver by such employee of any right he may have [to pursue a private cause of action under FLSA"]). Courts have allowed an additional exception to FLSA's restriction on settlement to include judicially-supervised stipulated settlements. *See Cheeks v. Freeport Pancake House*, 2015 WL 4664283 (2d Cir. August 7, 2015); *See also, Manning v. New York Univ.*, 2001 WL 963982, *12-13 (SDNY 2001)(*citing D.A. Schulte, Inc., v. Gangi*, 328 US 108, 113 n.8 (1946) and *Lynn's Food Stores, Inc. v. United States ex. Rel. U.S. Dept. of Labor*, 679 F.2d 1350 (11th Cir. 1982).

The Parties have executed a written settlement agreement (the "Settlement Agreement"), a copy of which is annexed as Exhibit "1", and jointly ask the Court to approve the settlement and dismiss the case with prejudice as set forth in Exhibit "3".

## I.  PROCEDURAL HISTORY

The case has a long procedural history. Plaintiffs filed the Complaint on August 1, 2019, alleging violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and violations of Articles 6 and 19 of the New York State Labor Law ("NYLL") and their supporting New York State Department of Labor regulations. [Dckt No. 5].

Immediately following the commencement of the action, Defendants instituted policy changes mandating that Plaintiffs promptly provide employment eligibility verification or face termination. [Dckt. No. 7]  On August 20, 2019, Plaintiffs sought the entry of a protective order, barring Defendants from instituting this retaliatory policy. *Id*.

On September 5, 2019, the Federal Court referred the action to Court-Ordered mediation, pursuant to S.D.N.Y. Local Civil Rule 83.9. [Dckt. No. 17]. On September 17, 2019, Defendants filed a letter in response to Plaintiffs motion for a protective order, and informing the Court that Plaintiffs Marcelino Ramos, Hernandez, Peralta, Reyes, Aucacama, Tecuapacho, Huerta, and Miguel Ramos were formally terminated from their employment. [Dckt. No. 22]

On October 11, 2019, Defendants' filed their answer, generally denying the allegations of the Complaint. [Dckt. No. 24]. A third notice of appearance was filed on behalf of Defendants on October 28, 2019. [Dckt. No. 25].

An unsuccessful mediation was held on November 25, 2019 before Mediator Evan J. Spelfogel, Esq., of Phillips Nizer. Formal discovery commenced and, in parallel, the parties continued to work within the SDNY-annex mediation program for approximately one (1) year, but ultimately did not resolve the case.

On June 19, 2020, each of the Defendants filed an expedited motion to voluntary dismiss the pending Chapter 11 actions in order to:

> "qualify for a payroll protection program ("PPP") loan, which would allow the Debtors to reopen and manage their debts outside of bankruptcy. The Debtors will continue settlement negotiations with the creditors in the FLSA Action post-bankruptcy."

The United States Bankruptcy Court of the Eastern District of New York subsequently dismissed the three (3) Chapter 11 Bankruptcy actions on June 26, 2020.

On July 22, 2020, the Court entered a civil case management plan and scheduling order. [Dckt. No. 45]. The parties also resumed settlement discussions, and informed the Court of their intention to resume mediation before Mediator Spelfogel. [Dckt. No. 46]. A second, follow-up mediation conference was scheduled for September 14, 2020. [*See* July 31, 2020 Docket Entry]. That session did not occur; the defendants re-entered bankruptcy protection in September 2020 and, on September 18, 2020, the District Court subsequently stayed the action, *sin die*, pending the resolution or dismissal of the Bankruptcy petitions. [Dckt. No. 48].

In the Bankruptcy, the case continued to be litigated. The parties continued to exchange information and voluntarily engaged a private mediator, Jeffrey Kimmell, Esq., from the

Akerman LLP firm. In conjunction with the private mediation and the Bankruptcy proceedings, the parties were finally able to reach a fair and amicable resolution which allowed the company and individual defendants to exit from Chapter 11, resolve the case, and continue to operate, hopefully in the near future as the state and local authorities are expected to soon allow the city to resume indoor dining operations at reduced capacity.

## II. FACTUAL BACKGROUND

Defendants Catteau and Denneulin are the co-owners of Brasserie Felix, a French bistro located in SoHo. The bankruptcy proceedings offered an unusually substantial amount of information into the individual and corporate defendants' finances, allowed the parties to negotiate at arms length, and reach a fair and equitable resolution which will allow the defendants to continue operations, while also providing substantial relief to the plaintiffs.

The twelve (12) plaintiffs worked at Brasserie Felix either as front-of-house or back-of-house staff. The exact nature of plaintiffs' duties and responsibilities, and the extent of their claim, varied by individual. The first eight (8) plaintiffs in the caption worked as front-of-house employees as food runners, busboys and/or barbacks. Of these eight (8) front-of-house employees, four (4) alleged they were not paid any wages, and four (4) alleged they were paid on a flat, weekly salary.[2] The remaining four (4) plaintiffs worked as back-of-house employees as line cooks and/or dishwashers. These back-of-hours employees were paid salaries which ranged between $680.00 to $750.00 per week. The plaintiffs did not seek collective action certification of the case. The existence of the lawsuit was well known within the restaurant, which primarily employed long term employees, and those employees who wanted to participate

---

[2] Defendants denied the allegations and the settlement is not an admission of the truth of the allegations in the complaint; the allegations are discussed in the context of assessing the fairness of the settlement - but all parties offer to elaborate to the court on their claims and defenses, preferably *ex parte* in consultation with the court, if required.

did. No non-parties current or former employees will be affected by the settlement of this case.

The document production in this action included more than 4,000 pages of payroll records for the plaintiffs as well as financials, which both sides suggested supported their respective claims and defenses.

Plaintiffs can be divided into two (2) category of workers. The first eight (8) named plaintiffs worked in the front of the house, as bus-persons and food runners. They were paid either no wages at all (i.e., Carlos Rangel; Juan Cuervo; Gustavo Jacobo Peralta) or they were paid for twenty-four (24) hours (below minimum wage), when they actually worked many more hours each week.

The remaining four (4) individuals worked in the kitchen and were paid a flat weekly salary without regard to their actual working hours, and without overtime compensation.

### A. The "Front-of-House" Plaintiffs

Plaintiffs alleged that for the front-of-house employees, Plaintiffs Miguel Ramos, Hernandez, Marcelino Ramos, and Sanchez there was no time keeping system to track their working hours. Plaintiffs Suarez, Peralta, Reyes and Camacho alleged that they were not paid *any* wages for the hours they worked at Brasserie Felix; they only received gratuities from customers.

#### i. Plaintiffs Suarez, Peralta, Reyes and Camacho

Plaintiff Suarez was employed as a food runner at Brasserie Felix from January 1994 through September 15, 2016, and from May 22, 2017 through December 2018. Plaintiff Suarez regularly worked from 5:00 p.m. to 12:00 a.m., four (4) days a week; and 10:00 a.m. to 10:00 p.m. one (1) day a week, for a total of forty (40) hours per week. Plaintiffs' counsel estimated his best-case scenario recovery to be approximately $100,000 including unpaid wages and spread of

hours premiums, exclusive of liquidated damages.

Plaintiff Peralta was employed as a busboy from March 29, 2014 through September 2019. Plaintiff Peralta regularly worked from 10:00 a.m. to 12:00 a.m., two (2) days a week; 9:30 a.m. to 12:00 a.m., one (1) day a week; and 11:00 a.m. to 11:00 p.m., one (1) day a week, for a total of fifty and one-half (50.5) hours per week. Because he was allegedly not paid wages but only received tips, Plaintiffs' counsel estimated his range of recovery could exceed $100,000 exclusive of liquidated damages.

Plaintiff Cuervo Reyes was employed as a busboy from March 2015 through September 2019. Plaintiff Cuervo Reyes regularly worked from 5:00 p.m. to 12:00 a.m., two (2) days a week; 10:00 p.m. to 12:00 a.m., one (1) day a week; 11:00 a.m. to 12:00 p.m., one (1) day a week; and 10:00 a.m. to 5:00 p.m. or 6:00 p.m. one (1) day a week, for a total of approximately forty-nine (49) hours per week. Because he was allegedly not paid wages but only received tips, Plaintiffs' counsel estimated his range of recovery could exceed $100,000 exclusive of liquidated damages.

Plaintiff Rangel Camacho was employed as a busboy from January 2015 through the present.  Plaintiff Rangel Camacho regularly worked from 10:00 a.m. to 11:30 p.m. or 12:00 a.m., two (2) days a week; 9:30 a.m. to 11:30 p.m., one (1) day a week; and 9:30 a.m. to 12:00 a.m., one (1) day a week; for a total of fifty-six (56) hours per week. Because he was allegedly not paid wages but only received tips, Plaintiffs' counsel estimated his range of recovery could exceed $100,000 exclusive of liquidated damages.

### ii. Plaintiffs Miguel Ramos, Hernandez, Marcelino Ramos, and Sanchez

Defendants paid Plaintiffs Miguel Ramos, Hernandez, Marcelino Ramos, and Sanchez a flat, weekly salary for less hours than they worked.

Plaintiff Miguel Ramos was employed as a food runner at from January 2005 through December 2009, and from January 2011 through September 2019. Plaintiff Miguel Ramos regularly worked from 10:00 a.m. to 5:00 p.m., five (5) days a week, for a total of approximately thirty-five (35) hours per week. Plaintiffs' counsel estimated his range of recovery to be approximately $67,000 in unpaid wages, exclusive of liquidated damages.

Plaintiff Marcelino Ramos was employed as a busboy, food runner and barback from November 2010 through September 2019. Plaintiff Marcelino Ramos regularly worked from 10:00 a.m. to 5:00 p.m., one (1) day a week; 10:00 a.m. to 12:00 a.m., three (3) days a week; and 9:00 a.m. to 12:00 a.m., one (1) day a week, for a total of approximately sixty-four (64) working hours per week.  He received a salary for some hours but was not compensated for all hours worked. Plaintiffs' counsel estimated his range of recovery could exceed $100,000 in unpaid wages, exclusive of liquidated damages.

Plaintiff Hernandez Sanchez was employed as a busboy, food runner from November 2012 through September 2019. Plaintiff Hernandez Sanchez regularly worked from 10:00 a.m. to 12:00 p.m., four (4) days a week; and 9:30 a.m. to 10:00 p.m., one (1) day a week, for a total of approximately sixty-eight and one half (68.5) working hours per week. Plaintiffs' counsel estimated his range of recovery could exceed $100,000 in unpaid wages, exclusive of liquidated damages.

Plaintiffs Miguel Ramos, Hernandez, Marcelino Ramos, and Sanchez were never provided an accurate written notice of their hourly rate of pay, overtime rate of pay, amount of tip credit and regular payday, in their primary language. Nor were they provided with proper written notice of Defendants' intention to claim a "tip credit".

B.  The "Back-of-House" Plaintiffs

### i. Plaintiffs Huerta, Acuacama, Tecuapacho and Romero

Plaintiffs' had a policy and practice to pay Plaintiffs Huerta, Acuacama, Tecuapacho and Romero a flat, weekly salary of $680 - $750 per week, despite the fact that these employees worked over forty (40) hours per week.

Plaintiff Andrade Huerta was employed as a cook from January 2004 through September 2019. Prior to 2018, Plaintiff Andrade Huerta regularly worked from 9:00 a.m. to 5:00 p.m., three (3) days a week; and 9:00 a.m. to 10:00 p.m., two (2) days a week, for a total of approximately fifty-two (52) working hours per week. Plaintiff's counsel estimated a best-case recovery for Mr. Andrade Huerta exceeded $100,000 based on the restaurant's payment of a salary rather than an hourly wage with overtime compensation.

Plaintiff Aucacama was employed as a cook from January 2013 through September 2019. Prior to 2018, Plaintiff Aucacama regularly worked from 11:00 a.m. to 11:00 p.m., five (5) days a week, for a total of approximately sixty (60) working hours per week.  By paying a salary rather than an hourly wage and using a favorable method of calculating his overtime owed, plaintiffs' counsel estimated that he could recover over $200,000, exclusive of liquidated damages.

Plaintiff Juarez Tecuapacho was employed as a cook from June 2015 through September 2019.  Plaintiff Juarez Tecuapacho regularly worked from 12:00 p.m. to 11:00 p.m., two (2) days a week; 5:00 p.m. to 11:00 p.m., two (2) days a week; 8:00 a.m. to 11:00 p.m., one (1) day a week, and 10:00 a.m. to 9:00 p.m., one (1) day a week, for a total of approximately sixty (60) working hours per week. By paying a salary rather than an hourly wage and using a favorable method of calculating his overtime owed, plaintiffs' counsel estimated that his recovery could

approach $200,000, exclusive of liquidated damages.

Plaintiff Romero was employed as a dishwasher and cleaner from February 2010 through the present. Plaintiff Romero regularly worked from 8:00 a.m. to 3:00 a.m., one (1) day a week, 5:00 p.m. to 3:00 a.m., four (4) days a week, and 4:30 p.m. to 2:00 a.m., one (1) day a week, for a total of approximately sixty-eight and one half (68.5) working hours per week. By paying a salary rather than an hourly wage and using a favorable method of calculating his overtime owed, plaintiffs' counsel estimated that he could recover over $200,000, exclusive of liquidated damages.

### III.   THE SETTLEMENT

In their best-case scenario plaintiffs' total damages may have exceeded $3,000.000. This included unpaid wages and overtime compensation, spread-of-hours premiums, liquidated damages at 100% of their damages, statutory penalties, prejudgment interest, attorneys' fees. Of course, defendants' had defenses which were supported by documents and witnesses, and the eventual outcome of the case entailed significant risk to all parties. And this is an immigrant-owned, single location restaurant is struggling to survive in an industry decimated by a global pandemic. The case proceeded on three (3) parallel tracks: discovery in the District Court (interrupted twice by Chapter 11 stays); proceedings in the Bankruptcy Court for the Eastern District of New York, where all defendants sought Chapter 11 reorganization; and settlement, in both the District Court and the Bankruptcy Court. Throughout all proceedings, all parties participated in good faith and with experienced counsel. Plaintiffs had two (2) law firms representing their interests, Peter Cooper, Esq. from Cilenti & Cooper, PLLC for the wage and hour litigation in this court, and Joshua Levin-Epstein, Esq., who represented the plaintiffs-creditors in the bankruptcy proceedings. Both firms represented plaintiffs in settlement

negotiations and during the private mediation where the case resolved. The plaintiffs themselves (all twelve (12) of them), actively participated at every stage in the proceedings.

Defendants, likewise, were represented in the District Court by the reputable Littler Mendelson P.C. firm and were similarly skillfully represented in the Bankruptcy Court by Lawrence Morrison from Morrison and Tenenbaum PLLC.

With that introduction, the parties represent to the court that the settlement is a fair and reasonable resolution of bona fide disputes, reached as a result of contested litigation from pleadings and substantial discovery in multiple judicial forums, the exchange of several thousand documents by the parties, court-facilitated mediation and private mediation, motion practice, and ultimately resolution of a complicated case involving twelve (12) individual claimants and three (3) defendants. The amount of the settlement is eight hundred thousand dollars ($800,000.00), payable in three (3) installments: the first payment of four hundred thousand dollars ($400,000.00) will be paid ten (10) days after the approval/dismissal and the balance in two (2) equal installments payable on or before June 30, 2021 and October 31, 2021, respectively. Two-thirds of the total settlement amount will be distributed to the plaintiffs, in proportion to their claims, described below and as annexed hereto as Exhibit "B". One third will be distributed to both law firms who represented the plaintiffs. Defendants paid for the services of the private mediator and other costs incurred by plaintiffs' counsel are waived.

Exhibit "B" to this application sets forth the amount of money each individual will receive; the settlement agreement provides a release, which is tailored to the allegations in the case. And the settlement is unique in that it provides additional protections to the plaintiffs in case of non-payment, including confessions of judgment by the individual defendants and UCC liens against property owned by both individual defendants, to be held in escrow by plaintiffs'

counsel in the unlikely event of default. The settlement structure also ensures that payments will made within a reasonable time, while affording the defendants time to gather / liquidate resources and also save ongoing litigation expenses, for this uninsured claim.

All parties recognized that there were valid factual disputes concerning the hours worked by the plaintiffs and the sufficiency of the wages they were paid. Plaintiffs were paid via a payroll service, and defendants produced payroll documents, some of which allegedly contradicted plaintiffs' recollections. In this case, in fact, thousands of pages of records were exchanged, and the company had better documentation than in many similar cases. On the other hand, some documents demonstrated at least part of the claims to be indicated.

Counsel on both sides have experience in this area of practice and worked with their respective clients to reach a fair and efficient resolution. Indeed, the parties respectfully submit that the settlement clearly "reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Le v. SITA Info. Networking Computing USA, Inc.*, 2008 WL 724155 at *1 (E.D.N.Y. 2008) (*quoting Lynn's Food Stores v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982). Here, there is no question that that settlement did not come about because of "overreaching" by the employer. To the contrary, plaintiffs maintained their convictions through multiple proceedings and discovery and are being made substantially though not completely whole, according to counsel's calculations.

Moreover, the settlement was reached as a result of repeated arm's length negotiations over the course of two (2) years, between counsel who are well versed in the prosecution and defense of wage and hour collective actions, and after countless meetings and phone calls between counsel and at court-ordered mediations. Courts typically regard the adversarial nature of a litigated FLSA case resolved via mediation to be a good indicator of the fairness of the

settlement.  *See*, *Aponte v. Comprehensive Health Management, Inc*., 2013 WL 1364147 at *4 (S.D.N.Y. 2013).

## IV.     ATTORNEYS' FEES

Both the FLSA and the Labor Law provide for awards of attorneys' fees and costs to plaintiffs who prevail on their claims under those statutes. *See* 29 U.S.C. § 216(b) ("The court in such action *shall*, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.") (emphasis added); N.Y. Lab. Law 198(1-a), 663(1). The FLSA and state wage and hour laws provide for fee-shifting to ensure that workers are not disadvantaged when they use the courts to recover unpaid wages guaranteed by statute. In many cases, including the case at bar, claimants are legally unsophisticated and have relatively small claims. Often, employers use efforts to thwart the legal process, which results in substantial legal work for counsel, with great risk of non-payment. The fee-shifting provisions are intended to help overcome these hurdles and encourage competent counsel to take on representations and skillfully represent their clients. In this case plaintiffs' counsel requests one-third, which will compensate both law firms represented the dozen plaintiffs. Recognizing the "significant risks" undertaken by attorneys who work on contingency, the New York State Court of Appeals has upheld such agreements of one-third or higher. *In Re: Lawrence*, 2014 WL 5430622 (NY October 28, 2014). In this case, the fee requested is one-third, which is less than what the firms would have billed hourly in its representation of twelve (12) individual plaintiffs.

## V.     CONCLUSION

Wherefore, the Parties jointly and respectfully request that this Court approve the Settlement Agreement of the Parties in the amount of $800,000, and dismiss the instant action

between the parties with prejudice, retaining jurisdiction to enforce the terms of the settlement agreement. Defendants operate a single-location neighborhood restaurant with limited financial resources and like the industry generally, has been disproportionately impacted by the COVID-19 crisis. The Agreement significantly decreases the risk of collection by permitting a reasonable settlement amount payable over time without the parties having to incur the expense, tremendous delay, and significant risk of trial. The parties seek fees in the amount of one-third of the settlement to be paid from the three (3) settlement installments. The fee is less than plaintiff's counsel's two (2) firms would have billed on an hourly basis. Moreover, as part of the settlement, Cilenti & Cooper, PLLC and Levin-Epstein & Associates P.C., will also be paid proportionately (one-third) over the settlement period, and as such the firms will not be paid fees any earlier than the plaintiffs receive their portion of settlement.

WHEREFORE, the Parties jointly and respectfully request that this Court approve the Settlement Agreement of the Parties, and dismiss the instant with prejudice, retaining jurisdiction to enforce the terms of the settlement agreement.

Dated: February 9, 2021
New York City

Respectfully submitted,

| /s/ *Eli Z. Freedberg, Esq.* | /s/ *Peter Hans Cooper, Esq.* |
|---|---|
| By: _____ | By: _____ |
| Eli Z. Freedberg, Esq. | Peter Hans Cooper, Esq. |
| LITTLER MENDELSON, P.C. | CILENTI & COOPER, PLLC |
| 900 Third Avenue | 10 Grand Central |
| New York, New York 10022-3298 | 155 East 44th Street – 6th Floor |
| Telephone (212) 583-9600 | New York, New York 10017 |
| Facsimile (212) 954-5011 | Telephone (212) 209-3933 |
| *Attorneys for Defendants* | *Attorneys for Plaintiffs* |